# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                           Case No. 8:20-cr-70-T-33AEP

**JOHNNY ORDAZ**

_____/

## MOTION TO SUPPRESS AND INCORPORATED MEMORANDUM

**COMES NOW** the Defendant, JOHNNY ORDAZ, by and through undersigned counsel, and moves this Court to suppress any physical evidence seized upon Defendant's arrest by Manatee County Sheriff's Office (MCSO) detectives, any statements Defendant made to those detectives on September 5, 2019 and February 21, 2020, and any subsequent search warrants and forensic testing. Defendant makes this motion based upon violations of the Fourth, Fifth and Sixth Amendments to the United States Constitution. Further, Defendant requests an evidentiary hearing and oral argument on this motion.

### STATE ACTION AND GROUNDS

1.  As the pole star and guide, all governmental conduct must comport

with the United States Constitution.  *See Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S. Ct. 574, 576 (1921); *Lustig v. United States*, 338 U.S. 74, 69 S. Ct. 1372 (1949). *See also, United States v. Ford*, 765 F.2d 1088, 1089-90 (11th Cir. 1985)*; United States v. Bomengo*, 580 F.2d 173, 175 (5th Cir. 1978).[1]  But cf., *United States v. Meister*, 596 F. App'x 790, 792 (11th Cir. 2015) (unpublished opinion) (stating the Fourth Amendment only applies to governmental action; "it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official") (emphasis added) (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984)).

The following facts, in pertinent part, derive from the reports of MCSO detectives Patrick Thames, Joe Petta, Jonathan Kruse, Scott Williamson, Eric Davis, and Ray Richter,.

    2.       The facts surrounding this case are in dispute.

---

[1]*See United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003) (providing that decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit) (citing *Bonner v. City of Prichard*, Alabama, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc)). See also, W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P.,* 566 F.3d 979, 985 n.6 (11th Cir. 2009); *United States v. Schultz*, 565 F.3d 1353, 1363 n. 3 (11th 2009).

3. On the afternoon of September 5, 2019, several MCSO detectives, in multiple vehicles, were conducting mobile surveillance of Mr. Ordaz, as he drove his 2015 Infiniti sedan in and around Bradenton, Florida, engaging in ordinary activities such as visiting his mother and getting his car washed.

4. Detectives claimed that the Infiniti failed to come to a complete stop at two stop signs yet continued to follow him for 44 blocks before initiating a traffic stop, upon information and belief.

5. Detectives also observed that the tinting of the Infiniti's windows was very dark, possibly illegally so.

6. Despite having observed Mr. Ordaz's committing traffic infractions, detectives did not conduct a traffic stop but continued following the Infiniti, which at some point turned into an apartment complex parking lot.

7. As observed by detectives, the Infiniti proceeded to the far northeast area of the parking lot and backed into a parking space, where it remained parked with the driver, Mr. Ordaz, remaining inside.

8. After a few minutes, the Infiniti began pulling out of the parking space, presumably headed toward the single exit of the apartment complex, which was blocked by several law enforcement vehicles.

9. Detectives decided to conduct a traffic stop in the parking lot.

10. Detective Kruse, in an unmarked van, activated the vehicle's emergency lights and pulled his vehicle to block the path of the Infiniti. The Infiniti stopped briefly.

11. When the Infiniti stopped, Detective Kruse, wearing plain clothes and a vest marked "Sheriff," exited his van.

12. Police claim the stopped Infiniti began to back up, returning in the direction from which it had come.

13. Detective Kruse re-entered his van and followed the Infiniti as it backed away toward the rear of the parking lot.

14. The Infiniti, backing up, ran over a parking lot curb and came to a stop.

15. Detectives in two additional unmarked vehicles arrived and positioned their vehicles to box in the stopped Infiniti.

16. Detective Petta, on foot near the driver's side of the Infiniti, pointed his firearm at the driver, Mr. Ordaz.

17. Detectives Williamson and Davis approached the Infiniti on foot and ordered the driver to exit the vehicle. Mr. Ordaz immediately complied.

18. When the driver's side door of the Infiniti was opened, detectives observed a handgun with an extended magazine, tucked between the driver's seat and the center console.

19. Detective Williamson reportedly detected the odor of marijuana in the Infiniti.

20. Detectives handcuffed Mr. Ordaz and placed him inside a law enforcement vehicle.

21. It has been recognized that a temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of persons within the meaning of [the Fourth Amendment]. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772-73 (1996). Traffic stops qualify as seizures under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391 (1979). *Accord, United States v. House,* 684 F.3d 1173, 1199 (11th Cir. 2012); *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009); *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

22. In the instant case, due to officers' seizure of him, Mr. Ordaz's Fourth Amendment right to the United States Constitution was triggered. *See Whren, Terry, and Bostic, supra*. As a result, Mr. Ordaz has standing to contest the legality of this seizure. *See Rekas v. Illinois*, 439 U.S. 128, 138, 99 S. Ct. 421, 425-30 (1978) (holding the rights assured by the Fourth Amendment are personal rights, [which] may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure) (citing *Simmons v. United States*,

5

390 U.S. 377, 389, 88 S. Ct. 967, 974 (1968)). *See United States v. Ramos*, 12 F.3d 1019, 1023 (11th Cir. 1994). *See also, Plumhoff v. Rickard*, 572 U.S. 765, 778, 134 S. Ct. 2012, 2022 (2014) (stating "our cases make it clear that "Fourth Amendment rights are personal rights which may not be vicariously asserted") (citing *Rekas, supra*); *Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 512 (1967) (holding the Fourth Amendment protects people "and not simply areas against unreasonable searches and seizures").

23. Detectives immediately conducted a warrantless search of the Infiniti, finding in the front passenger seat a backpack containing an additional handgun and magazine, and various rounds of ammunition.

24. Among other items found in the vehicle were a small baggy containing suspected fentanyl, additional empty baggies, a protective (ballistic) vest, several handwritten letters, and two cell phones.

25. Two marijuana blunts were found in the driver's side door handle.

26. Currency in the amount of $588 was found in Mr. Ordaz's pocket.

27. A MCSO patrol unit arrived with a meter to check the tint of the Infiniti's front side windows. The meter read 19% (light allowed into the vehicle), which is below the legal requirement for at least 28%.

28. Mr. Ordaz was transported to the Manatee County Sheriff's Office for processing. During Mr. Ordaz's transportation, he gave law enforcement including Detective Dickerman a statement in which he made admissions. In February 2020, he was again transported by Detective Dickerman and others and made a statement, which resulted in admissions.

29. The Fourth Amendment provides the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). When there has been an illegal search or seizure, evidence the police derive even indirectly from that illegality must be suppressed, including verbal statements. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). The Government has the burden of proving the reasonableness of a warrantless search or seizure. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

30. Detectives' warrantless search of Mr. Ordaz's vehicle was an illegal search, in violation of the Fourth Amendment. Testing was performed on drugs found during the search. Fingerprint analysis was performed, upon information and belief. Further, the illegal search was subsequently used to justify obtaining search

warrants for the forensic examination of two cell phones seized from Mr. Ordaz. Any evidence collected during the vehicle search, the searches of the two cell phones, forensic testing, and from any statements by Mr. Ordaz in connection with those searches are the fruit of the illegal warrantless search, and should be suppressed.

31. Mr. Ordaz's position is that he was illegally stopped by the officers and committed no traffic violations. He had been hounded for weeks by MCSO led by Detective Dickerman because they wanted information on a homicide. MCSO believed that Mr. Ordaz's car was present at the scene of the alleged homicide.

32. Moreover, MCSO had previously stopped Mr. Ordaz's mother while she was driving Mr. Ordaz's car. They surrounded the car with guns pulled and at the ready. MCSO never advised her that there was too much tint on the car. Upon information and belief, MCSO told her they wanted to talk to Ordaz and that is only reason they stopped the car.

33. As a result, the evidence subsequently discovered on Mr. Ordaz, in his vehicle, the statements he subsequently made to officers, outlined above, were void as they "grew" from the illegal seizure or stop of her vehicle by the officers.

34. In sum, the evidence discovered by the Government in this case was illegally obtained as a result of the bad traffic stop by the officers and represents fruit

of the poisonous tree.  Thus, for the reasons outlined herein, the evidence must be suppressed.  *See United States v. Pruitt*, 174 F.3d 1215, 1219 n. 3 (11th Cir. 1999) (holding as police officers well know, evidence which constitutes the "fruit of a poisonous tree" is inadmissible to prove a criminal suspect's guilt) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963)).  *See also, United States v. Davis,* 313 F.3d 1300, 1302 (11th Cir. 2002) (stating "evidence seized after an illegal seizure should be suppressed as the fruit of the poisonous tree.").

35. Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and seizure.  *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003) (citing *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990)).

36. Mr. Ordaz requests an evidentiary hearing on this motion to suppress as a factual dispute exists as to the events that led to his seizure, the resultant search of his vehicle, and the statements he allegedly made <u>after</u> being seized by officers.

37. Assistant United States Attorney David Waterman opposes this motion.

**WHEREFORE**, Mr. Ordaz requests this Court enter an order finding that the initial seizure of him was illegal, the resultant search of his vehicle violated his Fourth Amendment right, and his statements were derivative of the illegal seizure and in violation of the Fifth and Sixth Amendments.  As a result, Mr. Ordaz requests this Court find that all of the evidence discovered in this case represents fruit of the poisonous tree and is inadmissible.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

*/s/ Kathleen M. Sweeney*
Kathleen M. Sweeney
Indiana Bar No.: 2192-49
Assistant Federal Defender
400 N. Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Fax: (813) 228-2562
Email: Kathleen_Sweeney@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 30, 2020, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

David Charles Waterman, AUSA

*/s/ Kathleen M. Sweeney*
Kathleen M. Sweeney
Assistant Federal Defender