UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

  v.        CASE NO. 8:20-cr-70-T-VMC-AEP

JOHNNY ORDAZ

### UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum requesting a sentence of 165 months' imprisonment for defendant Johnny Ordaz:

### I. FACTUAL BACKGROUND

On September 5, 2019, Manatee County Sheriff's Office deputies, who were driving unmarked cars, observed Jonny Ordaz driving a car with tints that appeared to be darker than the legal limit. The deputies also observed Ordaz fail to come to a complete stop at two stop signs. The deputies decided to conduct a traffic stop of Ordaz based on these observations. Due to the deputies' prior history with Ordaz, the deputies decided to conduct the traffic stop in a location where Ordaz would not be able to flee.

The deputies attempted to conduct a traffic stop as Ordaz was attempting to leave an apartment complex. A deputy in a car equipped with lights attempted to pull Ordaz over. The deputy approached Ordaz with the deputy's car's lights activated. Ordaz briefly stopped his car. The deputy got out of his car and approached Ordaz's car. Ordaz began to drive his car in reverse in response. The

other deputies drove their cars towards Ordaz's car and attempted to box him. Ordaz continued to travel in reverse and eventually came to rest at the end of the parking lot.

The deputies approached the car and removed Ordaz from the car. The deputies observed a bag of two and one-half grams of fentanyl on the handle of the driver's side door. The bag also contained several small baggies and a cut up portion of a straw. The deputies found a Glock 23 firearm with an extended clip loaded with 31 rounds of ammunition between the driver's seat and center console. The deputies located a digital scale in the center console. The deputies searched a bag that was located in the passenger seat and found a Kel-Tec firearm loaded with 27 rounds of ammunition, an additional loaded firearm magazine, several additional rounds of ammunition, more plastic bags, and another digital scale. The deputies found $588 in Ordaz's pocket.

## II. PROCEDURAL BACKGROUND

On February 13, 2020, a federal grand jury sitting in the Middle District of Florida returned a three-count indictment charging the defendant with one count of Possession of Fentanyl with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Doc. 1. The Court presided over a jury trial beginning on July 6, 2021. Doc. 131. The jury found Ordaz guilty as charged on all counts on July 9, 2021. Doc. 136.

### III. PRESENTENCE INVESTIGATION REPORT

On September 23, 2021, probation issued its final Presentence Investigation Report (PSR) as to the defendant. Doc. 156. Ordaz has an Offense Level of 22 and a Criminal History Category of VI. Doc. 156 at ¶26 and ¶45. Ordaz has a guideline range of 84–105 months' imprisonment followed by a five-year consecutive mandatory minimum. *Id.* at ¶ 117.

The United States does not have any legal or factual objections to the information stated in the PSR. Ordaz has lodged six objections to the PSR, challenging: (1) the description of the offense conduct listed from in paragraphs ¶8–¶11; (2) receiving the two-level enhancement for obstruction of justice; (3) not receiving a two-level reduction in offense level for acceptance of responsibility; (4) the PSR containing narratives of previous criminal justice encounters; (5) the scoring of the criminal conviction in ¶39; and (6) receiving two points from the conviction listed in ¶41.

### IV. UNITED STATES' POSITION

The United States submits that Probation properly calculated Ordaz's guideline range and that the Court should overrule Ordaz's objection.

#### 1) The Court can consider the offense conduct listed in ¶8–¶11

The United States has submitted sufficient evidence to establish the factual basis described in ¶8–¶11 in the PSR. "When a defendant challenges a factual basis

of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) (citations omitted). A district court's factual findings may be based on evidence heard during trial. *Id*.

The testimony of the deputies elicited at trial was sufficient to meet this burden. The Court had the opportunity to hear and evaluate the testimony of the officers during the trial. The Court also had the opportunity to evaluate the testimony of many of the same witnesses at the suppression hearing. The testimony of the officers far exceeds the preponderance of the evidence. That trial and motion to suppress testimony are consistent with the factual basis.

**2) Ordaz should receive the two-level enhancement for obstruction of justice**

The United States supports Probation's application of the two-level enhancement for obstruction of justice under USSG § 3C1.1. Ordaz made the conscious decision to get sworn in, get on the witness stand, and provide materially false testimony.

"A defendant obstructs justice within the meaning of this provision when he commits perjury, defined as false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. White*, 848 F. App'x 830, 848 (11th Cir. 2021) (citations omitted). "A defendant's testimony constitutes perjury when the testimony: (1) is made under oath or affirmation; (2) is false; (3) is material; and (4) is "given with the willful intent to provide false testimony and not as a result of a mistake,

4

confusion, or faulty memory." *United States v. Greene*, 842 F. App'x 364, 373 (11th Cir. 2021) (citation omitted).

Ordaz made several false statements over the course of the trial. The most impactful of his false statements came from his claims regarding his fentanyl use. Ordaz's false statements were aimed directly at disputing the possession with intent to distribute aspects of Count One and Count Two.

Ordaz claimed that all of the fentanyl that he possessed was for personal use. When Ordaz was confronted about the quantity of fentanyl, Ordaz claimed that he was snorting fentanyl up to three or four times per day. Doc. 148 at 157; 159. The United States presented testimony that the manner in which the fentanyl was packaged was consistent with distribution and that the presence of two scales supported that inference. On cross-examination, Ordaz stated that he prepares his drugs by prepackaging his drugs for the week in individual baggies. *Id*. at 158–159 Ordaz essentially testified that he "meal prepped" his fentanyl. Ordaz also claimed that he organized his fentanyl in that manner so that he could take a quick hit and avoid his mother discovering his alleged drug use. *Id*. at 158–159.

The jury's verdict shows a clear rejection of Ordaz's implausible justification for the quantity of fentanyl he possessed and the manner in which it was packaged. Ordaz's statements regarding the fentanyl were clearly false, material, and not the result of a mistake, confusion, or memory failure.

Ordaz also made materially false claims with respect to how he obtained the $588 the deputies found in his pocket. Ordaz claimed that he had two sources of

5

income, (1) doing landscaping work for a family member and (2) renting out his car. Doc. 148 at 150–152. Ordaz also testified that he had not been able to perform landscaping after being shot. *Id.* When the United States cross-examined Ordaz on his fledgling car rental business, Ordaz gave a number of false statements. Ordaz admitted that he did not keep records for who he rented his car out to. *Id.* at 151. Ordaz also stated that he did not have a mechanism for how he would retrieve his car should a renter fail to return it. *Id.* at 163. Despite not keeping records or having a mechanism to retrieve the car, Ordaz also claimed that he rented the car to complete strangers. *Id.* at 162–163.

Ordaz's statements regarding his rental car business were material. The United States submitted testimony that narcotics dealing is a cash business. Ordaz's testimony about renting his car out was an attempt to provide an explanation for why he had $588 cash and contest the with the intent distribute elements of Counts One and Two.

### 3) Ordaz should not receive the two-level reduction for acceptance of responsibility

Ordaz's reasoning for going to trial is not one of the rare instances where a defendant may go to trial and demonstrate acceptance of responsibility.

The commentary to USSG § 3E1.1 states that the two-level reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG. § 3E1.1, cmt. n.2. Ordaz has not

6

admitted guilt and has not expressed remorse. The commentary furthers states, in "rare situations a defendant who proceeds to trial may clearly demonstrate acceptance of responsibility, such as where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." *United States v. Padgett*, 852 F. App'x 408, 415–16 (11th Cir. 2021). "A defendant who fails to accept responsibility for all of the crimes he has committed and with which he has been charged is entitled to nothing under § 3E1.1." *United States v. Thomas*, 242 F.3d 1028, 1034 (11th Cir. 2001).

Ordaz has not accepted responsibility. Ordaz contested his factual guilt for every charge in the indictment. Ordaz readily admitted to possessing fentanyl, but he disputed that he possessed fentanyl with the intent to distribute. Ordaz even committed perjury in his disputing of the possession with the intent to distribute elements of Count One and Count two. "Thus, this is not an occasion where a defendant went to trial to preserve an issue aside from his factual guilt." *Padgett*, 852 F. App'x at 415–16. Ordaz's challenge of the interstate nexus element of Count Three is also grounds for the Court determine that Ordaz did not accept responsibility. *United States v. Moore*, 814 F. App'x 465, 468 (11th Cir. 2020) ("Moore did not admit the interstate nexus, and because he did put the Government to its burden of proof at trial ... he is not entitled to the reduction.").

7

### 4) The narrative portions of Ordaz's criminal history should remain in the PSR

Ordaz's objection should be overruled for two reasons: (1) under Fed. R. Crim. P. 32(d)(A)(i), the Presentence Report is required to have the information Ordaz seeks to exclude; and (2) his objection to the factual inaccuracies in the Presentence Report are too vague.

"The presentence report must also contain [ ] the defendant's history and characteristics, including: any prior criminal record." Fed. R. Crim. P. 32(d)(A)(i). Federal Rule of Criminal Procedure 32 does not define the phrase "criminal record." The Eleventh Circuit has taken a broad reading of the phrase. Looking at 5 U.S.C. § 9101(a)(2) and 42 U.S.C. § 14616(4)(A), the Eleventh Circuit found that the phrase "criminal records" includes "not only convictions, but also records of arrest and indictments and other formal criminal charges, regardless of their disposition." *United States v. Davis*, 233 F. App'x 944, 945–46 (11th Cir. 2007)[1].

The two statutes relied upon by the Eleventh Circuit in interpreting the phrase "criminal history," include the type of information that Ordaz seeks to exclude in their definition. The information, that Ordaz is objecting to is required by Fed. R. Crim. P. 32, therefore his objection should be overruled.

Ordaz asserts a general objection to the entirety of the narrative portions of ¶¶ 30–42; 46–52; 54–55 of the Presentence Report. He does not make any specific challenge to any specific statement. He asserts that the information is not reliable.

---

[1] 46 U.S.C. § 14616 was transferred to 34 U.S.C. § 40316 effective September 1, 2017.

This statement is too vague to sustain Ordaz's objection. The Eleventh Circuit has held, "[v]ague assertions of inaccuracies in the report are insufficient; instead, the defendant must make clear and focused objections to specific factual allegations made in the report." *United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir. 1988). Ordaz's objection falls short of the required specificity, and therefore, should be overruled.

### 5) The conviction in ¶39 is properly scored

The Court should overrule Ordaz's objection to probation's scoring of the offense in ¶39. The United States Sentencing guidelines plainly require the two offenses in ¶39 and ¶ 40 to both be scored.

The United States Sentencing Guideline in relevant part states

> [p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest…If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

USSG § 4A1.2(a)(2). The convictions described in ¶39 and ¶40 do not fall under either listed exception. The offense in ¶39 is charged in an information in Florida state court case 2011CF00953. Doc. 156 at 34–35 The state court sentenced on Ordaz on March 22, 2013. *Id.* at 36–44. The offense in ¶40 is charged in a federal indictment in case number 8:11-cr-190-T-RAL-TGW. Id. at 45–48. The federal court imposed sentenced Ordaz on June 10, 2013. *Id.* at 50–57.

9

The record clearly demonstrates that these two convictions are the results of two different charging documents and that two different courts sentenced Ordaz on two different days.

### 6) Probation correctly attributed two points to Ordaz for the conviction listed in ¶41

Ordaz served a sentence of 287 days in Florida case 12MM591. United States Sentencing Guideline § 4A1.1(b) provides that two points are added for all sentences of at least sixty days that are not counted under § 4A.1. Probation correctly added the two points to Ordaz's criminal history. Ordaz's argument that he did not physically serve all 287 days in the Sarasota County jail is irrelevant. Ordaz's argument ignores the fact that he was able to accumulate credit for his state case while waiting to resolve his federal case. Ordaz served a sentence of 287 days on his state court case, even if some of the time was accumulated in federal custody.

## V. SENTENCING FACTORS UNDER 3553(a)

The United States is requesting a sentence of 165 months' imprisonment. The circumstances of the offense and the defendant's criminal history dictate that Ordaz receive a sentence of 165 months. *See* 18 U.S.C. § 3553(a)(1). A sentence of 165 months' imprisonment will also serve to promote the defendant's respect for the law, and encourage deterrence to criminal conduct. See 18 U.S.C. § 3553(a).

A district court must consider all of the listed factors in 18 U.S.C. § 3553(a), it however, is not required to give all of the factors equal weight. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). A district court is permitted to attach greater

weight to certain factors over others. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 57 (2007). The decision about how much weight is assigned to a particular factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

Ordaz has a long history with the criminal justice system. Ordaz has been collecting arrests, convictions, and sentences like basketball trading cards over the past 14 years. Ordaz has achieved a criminal history category of VI—the highest possible category—without the aid of any sentencing enhancements. None of those encounters with the police or sentences have served to teach Ordaz respect for the law, deter future criminal conduct, or protect the public from Ordaz's future criminal conduct.

Ordaz was serving two terms of federal supervised release at the time of the current offense. Despite being on supervised release, Ordaz actively made several bad decisions. Ordaz made the choice to deal fentanyl. Ordaz made the choice to arm himself with two firearms. He made the choice to arm both of those firearms with extended clips, both holding more than twenty rounds. The circumstances of the offense and Ordaz's decision making clearly demonstrate that he is a danger to the community. Ordaz decided to drive around Manatee County in a car with blacked out windows with fentanyl and a firearm with an extended clip and chambered round at the ready.

Ordaz's significant lengthy criminal history coupled with his behavior while serving two terms of supervised release call for a sentence of 165 months'

11

imprisonment. The 165-month sentence would be the longest sentence Ordaz has ever served. This sentence would serve to instill a respect for the law and deterrence into Ordaz that the numerous prior sentences failed to instill.

## VI. CONCLUSION

For the aforementioned reasons, the United States respectfully submits that a sentence of 165 months' imprisonment is reasonable, fair, and reflects the directives set forth in 18 U.S.C. § 3553.

Respectfully submitted,

Karin Hoppmann
Acting United States Attorney

By: */s/ Charlie D. Connally*
Charlie D. Connally
Assistant United States Attorney
Florida Bar No. 98475
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Charlie.Connally@usdoj.gov

**U.S. v. Ordaz**                           Case No. 8:20-cr-70-T-VMC-AEP

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Kathleen Sweeney, AFPD

           */s/ Charlie D. Connally*
           Charlie D. Connally
           Assistant United States Attorney
           Florida Bar No. 98475
           400 N. Tampa Street, Suite 3200
           Tampa, Florida 33602-4798
           Telephone:   (813) 274-6000
           Facsimile:    (813) 274-6358
           E-mail: Charlie.Connally@usdoj.gov